IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HARRY DONALD NICHOLSON, JR., #2232299, MOVANT, | § § § § | |
| v. | § § | CASE NO. 3:21-CV-501-X-BK |
| DIRECTOR, TDCJ-CID RESPONDENT. | § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition on the petitioner's application for habeas corpus under 28 U.S.C. § 2254. As stated below, the petition should be **DENIED**.

### I. BACKGROUND

Harry Donald Nicholson, Jr. ("Nicholson") was charged with aggravated assault on a public servant. *See* Doc. 15-26 at 11-13 (criminal complaint); *Nicholson v. State*, 594 S.W.3d 480, 489 (Tex. App.—Waco 2019, pet. ref'd in relation to the aggravated assault conviction).[1] The state appellate court set out the pertinent facts of the offense:

> The record reflects that Nicholson was about to be arrested for an active warrant. When Officer Layfield attempted to effectuate the arrest, Nicholson forcefully pulled away from the officer, entered the pickup truck, and fled. Corsicana Police Officer Heath Hayes recounted that, as he pulled into the parking lot gas station, he observed Officer Layfield inside the door of Nicholson's vehicle while Nicholson got into the vehicle and put the vehicle in reverse. Nicholson initially drove around

---

[1] Nicholson also was convicted of evading arrest, but that conviction remains pending on petition for discretionary review in the Texas Court of Criminal Appeals. Doc. 2 at 6.

> the back of a business, through a drive-through lane. As Nicholson drove around to the front of the business, another police vehicle driven by Officer Frazier entered the parking lot. Thereafter, Nicholson drove his pickup truck into the driver-side door of Officer Frazier's patrol unit.
>
> The jury was shown a dash-camera video, which showed Nicholson's brake lights were off at the moment before his pickup truck collided with Officer Frazier's patrol unit. In other words, Nicholson had disengaged the brakes on his pickup truck immediately before the collision. Officer Hayes stated that, after the collision, Officer Frazier's patrol unit continued to bounce, indicating that Nicholson was "[s]till trying to leave." Officer Frazier recalled that, after the collision, he could feel the door panel of his patrol unit vibrating and he could hear Nicholson's "engine revving up like it was trying to go." As a result of the collision, Officer Frazier was injured.

*Nicholson*, 594 S.W.3d at 489. The jury found Nicholson guilty and sentenced him to 60 years' imprisonment. Doc. 15-26 at 118. He appealed to the Tenth Court of Appeals for Texas, which affirmed the aggravated assault conviction that he challenges here. *Nicholson*, 594 S.W.3d at 482.

Nicholson's subsequent petition for discretionary review (PDR) was denied by the Texas Court of Criminal Appeals (CCA). *See Nicholson v. State*, PDR No. 962-19 (Tex. Crim. App. 2019); Doc. 1 at 3. Nicholson did not file a state habeas application, Doc. 1 at 3, and filed this federal habeas application and brief in support on March 4, 2021. Doc. 1. The State has filed a response, Doc. 13, and Nicholson has filed a reply, Doc. 16.

## II. STANDARD OF REVIEW

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. When reviewing state proceedings, a federal court does not sit as super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is

2

also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Federal habeas corpus relief for state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254(d) provides that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). To obtain federal habeas corpus relief, a state prisoner must show that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011). A petitioner must show there was no reasonable basis for the state court to deny relief. *Id.* at 98.

A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002). A state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of

correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001).

When the highest state court denies a claim without explanation or a written opinion, the federal habeas court should look through to the last state court decision that provided an opinion or explanation for denying the claim, assume that the state high court adopted the same reasoning, and defer to those bases if they are reasonable. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Nevertheless, "[d]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. When there is no explanation from any state court, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.*

### III. ANALYSIS

Nicholson asserts one claim for habeas relief: that "the state presented insufficient evidence to show that, in unsuccessfully trying to slowly drive by Detective Frasier's SUV, Nicholson was aware of but consciously disregarded a substantial and unjustifiable risk that Detective Frasier would be injured." Doc. 1 at 6. This claim lacks merit.

"The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). And "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). To determine whether there is sufficient evidence support a conviction, the Court must

review the substantive elements of the crime as defined by state law. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n. 16).

In addition, the AEDPA imposes a "twice-deferential" standard when a federal court reviews a state prisoner's claim of insufficiency of the evidence. *Parker*, 567 U.S. at 43.

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)).

*Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012).

As to the culpable mental state element of the offense, in addressing recklessness, intent may be inferred from circumstantial evidence, such as the acts, words, and conduct of the defendant. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). "At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct[.]'" *Williams v. State*, 235 S.W.3d 742, 752 (Tex. Crim. App. 2007) (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)). "Such a 'devil may care' or 'not giving a damn' attitude toward the risk distinguishes the culpable mental state of criminal recklessness from that of criminal negligence, which assesses blame for the failure to foresee the risk that an objectively reasonable person would have foreseen." *Id.* at 751-52. The factfinder must examine the defendant's conduct to determine whether:

(1) the alleged act or omission, viewed objectively at the time of its commission, created a 'substantial and unjustifiable' risk of the type of harm that occurred;

5

    (2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation (i.e. it involved an 'extreme degree of risk, considering the probability and magnitude of the potential harm to others');

    (3) the defendant was consciously aware of that 'substantial and unjustifiable' risk at the time of the conduct; and

    (4) the defendant consciously disregarded that risk.

*Williams*, 235 S.W.3d at 755-56; *see also* TEX. PEN. CODE. § 6.03 (same).

The State may prove recklessness through direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *See Balderas v. State*, 517 S.W.3d 756, 765-66 (Tex. Crim. App. 2016). The State need not prove awareness of a specific risk to a specific individual. *See, e.g.*, *Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet ref'd).

In the instant case, the state court did not unreasonably apply *Jackson* in rejecting Nicholson's claim.[2] Its reasoning was as follows:

> Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable factfinder could infer that Nicholson's conduct was reckless. Fleeing from the police in a gas-station parking lot, disengaging the brakes on his pickup truck, and purposefully revving his engine and ramming Officer Frazier's patrol unit created a substantial and unjustifiable risk that someone would be injured. *See Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009) (concluding that a failure to apply brakes before a collision is evidence of recklessness); *see also Black v. State*, No. 12-05-00130-CR, 2006 Tex. App. LEXIS 7581, at **9-10 (Tex. App.—Tyler Aug. 25, 2006, no pet.) (mem. op., not designate for publication) ("But from these facts, the jury might reasonably infer recklessness; that, because of the warrants, Appellant was so desperate to evade arrest that, knowing the officer was dismounting behind him, he abandoned his vehicle on an incline and in drive, consciously disregarding the substantial and unjustifiable risk of injury to Officer Mulligan."). The record does not support Nicholson's contention that he was merely "trying to slowly squeeze by."

---

[2] As the state appellate court was the only court to issue an explanation for denying Nicholson's claim, this Court "reviews the specific reasons given by the state court and defers to them if they are reasonable." *Wilson*, 138 S. Ct. at 1192.

> Additionally, the record indicates that Nicholson had been using cocaine prior to this incident, and intoxication is also a factor that weighs in favor of a finding of recklessness. *See Gill v. State*, 981 S.W.2d 517, 519 (Tex. App.—Beaumont 1998, no pet.) ("We acknowledge that speeding is not necessarily reckless conduct. Speeding while intoxicated, however, is reckless conduct.").
>
> Accordingly, a reasonably jury could determine that this substantial and unjustifiable risk was a gross deviation from the standard of care that a reasonable person would exercise in the same situation; that Nicholson was aware of that risk at the time of his conduct; and that he consciously disregarded that risk. *See Williams*, 235 S.W.3d at 755-56. As such we hold that the evidence is sufficient to support his conviction for aggravated assault on a public servant. *See* TEX. PENAL CODE ANN. § 22.02(a); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Zuniga* [*v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018)]; *see also Hernandez v. State*, No. 07-11-0240-CR, 2013 WL 427135, at *3, 2013 Tex. App. LEXIS 1007, at *8 (Tex. App.—Amarillo Feb. 4, 2013, no pet.) (mem. op. not designated for pub.) ("Notwithstanding his inexperience as a driver, he attempted to flee the scene in an SUV by driving it through a space between Lieutenant Parker's unit and a camper and pickup parked along a residential street which provided to be too narrow. It is inconsequential that he did not intend to strike Lieutenant Parker's unit or cause him injury. His actions, at the very least, were reckless."). We overrule Nicholson's second issue.

*Nicholson*, 594 S.W.3d at 489-490.

The Court agrees that a rational factfinder—especially when presented with the clear video evidence available here—could have determined that Nicholson was reckless because "[f]leeing from the police in a gas-station parking lot, disengaging the brakes on his pickup truck, and purposefully revving his engine and ramming Officer Frazier's patrol unit created a substantial and unjustifiable risk that someone would be injured," and that Nicholson consciously ignored this risk. *Id.* at 489. This conclusion is bolstered by the Texas decisions the state appellate court referenced. At the very least, the state court's decision was reasonable under the appropriate "twice-deferential" review. *Parker*, 567 U.S. at 43.

Nicholson argues that the question is whether the evidence showed that "in trying to squeeze by Detective Frasier's SUV, Nicholson was 'aware of but consciously disregard[ed] a substantial and unjustifiable risk' that" he would injure Officer Frasier. Doc. 2 at 13. He

7

suggests that the Court need only watch the pertinent video footage to conclude that the jury speculated—as opposed to inferred—that Nicholson actually "perceived and disregarded a risk that he would collide with the detective's SUV and cause bodily injury." Doc. 16 at 6. And he maintains that the fact that his brakes were disengaged "does not show that [he]consciously perceived a risk that the opening between Detective Frasier's SUV and the parking bollard was too small," making it likely that the vehicles would collide. Doc. 2 at 15. Instead, Nicholson continues, the video shows a "minor slow-moving collision" and "just as easily supports the inference that Nicholson merely misjudged the opening's width, failing to perceive the risk in his driving at all." Doc. 2 at 15.

These arguments are not persuasive. First, the state appellate court found that the record did not support Nicholson's contention that he was merely "trying to slowly squeeze by" the officer's vehicle. *Nicholson*, 594 S.W.3d at 490. This Court agrees. The video evidence shows Nicholson driving through a parking lot to escape from police, and then, as Officer Frazier comes onto the scene to Nicholson's left, he disengages his brakes and tries to go around Officer Frazier's vehicle but hits it instead. Doc. 20 at 4:44-5:18 (dashcam video footage).

Second, Nicholson's conception of the issue is too narrow. It is not simply whether he was consciously aware of a substantial and unjustifiable risk of injury to the officer at the precise moment he tried to get around the officer's vehicle, ignoring his other conduct leading up to that point. Rather, as the state court properly put it, the question was whether Nicholson's conduct, in fleeing from the police in a gas station parking lot, disengaging his brakes, and trying to get around an officer's vehicle that was blocking his attempted escape created a substantial and unjustifiable risk that "someone would be injured," and whether Nicholson was aware of that risk and disregarded it. *Nicholson*, 594 S.W.2d at 489; *see also Johnson v. State*, 224 P.3d 105,

111 (Alaska 2010) ("A defendant is responsible for the natural consequences of his or her act or failure to act. Natural consequences are those reasonably foreseeable in light of ordinary experience. The defendant need not have foreseen the specific manner of resulting harm so long as (1) the general type of harm was foreseeable, and (2) the actual harm falls within the scope of risk hazarded by the defendant's conduct and is not too remote or accidental in occurrence."). As discussed above, ample evidence allowed the jury to answer that inquiry in the affirmative.

As for the evidence regarding the brakes, while it is possible the jury could have concluded that Nicholson's failure to engage the brakes showed that he was unaware of the risk his reckless conduct created and simply misjudged the width of his escape route, the jury did not come to that conclusion. As Nicholson admits, the evidence "just as easily" supports the inference the jury did make—that Nicholson consciously disregarded a substantial risk of harm that he created. Doc. 2 at 15.

Nicholson also argues that the state court erred in relying on his intoxication to support its finding of recklessness because, while there was evidence that Nicholson had pipes in the center console of his vehicle, there was no evidence that the pipes had been recently used. Doc. 2 at 14. In concluding otherwise, Nicholson argues, the state appellate court unreasonably determined the facts in light of the evidence presented in the proceeding." Doc. 2 at 14 (citing 28 U.S.C. § 2254(d)(2)). Again, the Court disagrees.

First, under Section 2254(e)(1), a state court's factual findings are presumed to be correct and can only be rebutted with clear and convincing evidence. *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. at 338-39. ("State-court factual findings, moreover, are presumed

9

correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"). Nicholson has not rebutted by clear and convincing evidence the state appellate court's factual finding that Nicholson was intoxicated. While he argues there is scant evidence supporting such finding, he points to nothing in the record contradicting it. *See* Doc. 2 at 14-15.

Second, even if a specific factual determination is erroneous, for purposes of assessing error under Section 2254(d)(2), this Court should still look to the state court's ultimate decision and whether it, despite the factual error, is based on an unreasonable determination of the facts in light of *all* the evidence presented in the state court proceeding. *See*, *e.g.*, *Collier v. Norris*, 584 F.3d 415, 423 (8th Cir. 2007) (noting that, notwithstanding assumption that factual statements by the state court were incorrect, "it does not necessarily follow that the state court adjudication was based on an unreasonable determination of facts because subsection (d)(2) instructs federal courts to evaluate the reasonableness of the state court decision 'in light of the evidence presented in the State court proceeding.'") (citing 28 U.S.C. § 2254(d)(2)); *see also Valdez*, 274 F. 3d at 951, n.17 (explaining that while Section "2254(d)(2) sets out a general standard by which the district court evaluates a state court's specific findings of fact, § 2254(e)(1) states what an applicant will have to show for the district court to reject a state court's determination of factual issues…Thus, it is possible that, while the state court erred with respect to one factual finding under § 2254(e)(1), its determination of facts resulting in its decision was reasonable under § 2254(d)(2)."); *Lambert v. Blackwell*, 387 F.3d 210, 235-36 (3rd Cir. 2004) ("[T]he language of § 2254(d)(2) and § 2254(e)(1) implies an important distinction: § 2254(d)(2)'s reasonableness determination turns on a consideration of the totality of the 'evidence presented in a state court proceeding,' while § 2254(e)(1) contemplates a challenge to the state court's

individual factual determinations, including a challenge based wholly or in part on evidence outside the state trial record.").

Thus in the case sub judice, even assuming there was clear and convincing evidence that Nicholson was not intoxicated, the Court looks to the entire factual record to see if the state court's decision was based on an unreasonable determination of the facts generally. Besides the intoxication finding, all other facts that the state appellate court relied upon are well supported, including its specific finding that Nicholson was not trying to slowly squeeze by Officer Frazier's vehicle, supporting the conclusion that there was sufficient evidence to support the conviction.

And finally, even if AEDPA deference did not apply because the state court's decision was based on an unreasonable determination of the facts, Nicholson's claim would still fail under a *de novo* review. *See, e.g.*, *Langley v. Prince*, 926 F.3d 145, 163 (5th Cir. 2019) (noting that even if AEDPA's relitigation bar does not apply, the defendant would not automatically be entitled to habeas relief and "would still need to show—under a *de nevo* review standard—'that he is in custody in violation of the Constitution…of the United States.'") (citing 28 U.S.C. § 2254(a) (*Berghuis v. Thompson*, 560 U.S. 370, 390 (2010); (*Salts v. Epps*, 676 F.3d 468, 480 (2012)). And on *de nevo* review, this Court would find that a rational factfinder could have found that Nicholson was reckless for all the reasons besides intoxication already discussed.

Last, Nicholson tries to differentiate some Texas cases that the state appellate court relied upon in upholding the jury's finding of recklessness and argues that his case is more like another case that the state court did not discuss. Doc. 2 at 16. He argues that this case is "nothing like" *Hernandez*, in which the court found sufficient evidence of recklessness when the defendant, in

11

attempting to flee from the police, tried to drive his car between parked cars and a patrol vehicle and hit the patrol vehicle. *Hernandez*, 2013 WL 427135, at *1, 3; Doc. 2 at 16.

But Nicholson does not adequately distinguish *Hernandez*. He argues that the defendant in that case admitted that he knew he would hit a police car but wanted to get away, while there was no evidence that Nicholson knew that he would hit the police vehicle. Doc. 2 at 16. But the jury could have found that Nicholson, like the defendant in *Hernandez*, was consciously aware of the substantial risk of injury that he created and did not nothing to abate it. Thus, *Hernandez* actually supports the state court decision because it shows that efforts to flee from the police, including misjudging the feasibility of escape routes, are indicative of criminal recklessness.

As for *Gill v. State*, 981 S.W.2d 517, 519 (Tex. App—Beamont 1998, no pet.), the state appellate court referenced this case for the principle that intoxication supports a finding of recklessness. *Nicholson*, 594 S.W.3d at 490. But, as discussed above, even without considering whether Nicholson was intoxicated, there was sufficient evidence that he was reckless, and the Court need not determine whether *Gill*'s facts meaningfully different from Nicholson's.

Nicholson also says that his case is nothing like *Nguyen v. State*, 506 S.W.3d 69 (Tex. App.—Texarkana, 2016, pet ref'd), or *Montgomery v. State*, 369 S.W.3d 188, 191 (Tex. Crim. App. 2012)—two additional cases in which Texas courts found sufficient evidence of criminal recklessness. But neither the state appellate court nor the State in its brief to this Court tries to liken Nicholson's case to *Nguyen* or *Montgomery*. *See* Doc. 2; Doc. 13. At any rate, neither of those cases forecloses the possibility that criminal recklessness might exist under facts like Nicholson's, so those cases do not help him.

Nicholson maintains that this case is actually like *Queeman v. State*, 520 S.W.3d 616 (Tex. Crim. App. 2017), in which the court found insufficient evidence of recklessness where the

12

defendant crashed into an SUV and there was evidence that the defendant was speeding and following the SUV too closely. *Id.* at 639; Doc. 2 at 17. Nicholson, though, fails to explain why his case is like *Queeman*. No one is arguing that Nicholson was reckless because he was speeding on a public highway or failed to maintain a proper distance between his vehicle and another that he was following.

In sum, a rational factfinder could have concluded that Nicholson displayed the very "devil may care" or "not giving a damn" attitude to a substantial and unjustifiable risk envisioned by the criminal reckless standard. *See Williams*, 235 S.W.3d at 752 (citing and contrasting TEX. PENAL CODE § 6.03(d), the criminal negligence standard). At the least, the state court was not unreasonable in finding that a rational factfinder could have come to that conclusion. Nicholson's arguments to the contrary are not persuasive and federal habeas relief is not warranted.

## IV. CONCLUSION

For the foregoing reasons, Nicholson's habeas corpus petition should be **DENIED**, and this case should be **DIMISSED WITH PREJUDICE.**

**SO RECOMMENDED** on November 18, 2022.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).